# FOOD FAIR STORES, INC. *v.* HEVEY ET AL.

[No. 173, September Term, 1974.]

*Decided May 26, 1975.*

The cause was argued before SINGLEY, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Marvin I. Singer,* with whom were *Sullivan, Wiesand & Singer* on the brief, for appellant.

*Arthur V. Butler,* with whom were *J. Patrick Coyne* and *Lawrence F. Weslock* on the brief, for appellees.

LEVINE, J., delivered the opinion of the Court.

This appeal is from an award of punitive damages in the total sum of $100,000 recovered jointly by appellees, Edmund J. Hevey and Gordon L. Malone (the employees), at the conclusion of a jury trial in the Circuit Court for Calvert County. In addition, the employees were awarded separate judgments for compensatory damages in consequence of verdicts directed by the trial judge (Bowen, J.). Appellant (Food Fair) does not contest those judgments.

These proceedings arose from an action brought by appellees against Food Fair for wrongful conversion of moneys allegedly due them under that company's "Incentive Bonus and Retirement Plan" (the Plan). In February and April of 1970, the employees voluntarily terminated their employment and commenced to work for two other companies whom Food Fair regarded as competitors. For that reason, Food Fair denied the employees their benefits pursuant to Section 7.1 of the Plan, and caused their accrued interests therein to be redistributed among the remaining participants.[1] The employees were notified of this action by letters from Food Fair dated May 28, 1970.[2]

In *Food Fair Stores v. Greeley*, 264 Md. 105, 285 A. 2d 632, 54 A.L.R.3d 177 (1972), decided January 12, 1972, we held under circumstances identical to those here that the

---

1. Section 7.1 of the Plan provides as follows:

   *"If the Committee determines in its sole and absolute discretion* that a Participant has engaged in fraud or dishonesty toward the Company, or has intentionally damaged the Company's property, or has wrongfully disclosed any secret process or imparted any confidential information, or has done any act inimical to the interest of the Company during his employment or thereafter such as *engaging in a competing business or entering the employ of a competitor of the Company,* the Committee shall have the full right and power to suspend, reduce, terminate or forfeit the benefits or interest of such Participant (or his Beneficiary) in the Plan, whether or not vested." (emphasis added).

2. Although each of those letters merely said, quoting from a resolution adopted by the Advisory Committee which administered the Plan, that the employee was not entitled to receive any benefits "as stated in Section 7.1 of the Plan," it is clear from the report and recommendation on which the Advisory Committee acted that the benefits were denied under the anti-competition clause.

anti-competition clause of Section 7.1 of the Plan was an unreasonable restraint upon the right to earn a livelihood, and that the refusal of Food Fair to pay benefits to Greeley under the Plan constituted a conversion. Following that decision, the employees filed this action on December 28, 1972. At the conclusion of all the evidence at the trial, as we have already noted, the court directed verdicts in favor of both employees on their claims for compensatory damages upon the authority of *Food Fair Stores v. Greeley, supra.*[3] The compensatory damage awards included the amounts found to have been wrongfully withheld from the employees and interest thereon accruing from the date of the conversion in May 1970.

The rationale for the trial judge's submission of the punitive damage issue to the jury is revealed in his ruling on a pretrial motion for summary judgment, which he adopted by reference at the trial:

> "... If I understand correctly the plaintiffs' position, it is that they are small individual parts of a large corporate undertaking, ... and that it is incumbent upon the large corporate undertaking to obey the law and provide what is required without the necessity of them having to resort to Courts to enforce their rights if their rights have been plainly established by the law, and that acting contrary to the claim the State law brings the Defendant within that ambit of evidence dealing with total circumstances indicating oppression or dealing at a disadvantage perhaps would be another way of saying it .... Usually [punitive damages] are awarded as a punishment for deliberate wrongdoings, either wrongs to the person directly or wrongs to the property directly, but in this area where *there is no animosity, no direct animosity or demonstrable malice is shown* but where the

---

**3.** In announcing his action, the trial judge purported to grant this relief under the contract counts in the declaration. It is clear from his explanation, however, that he meant to do so under the conversion claims, and we shall proceed on that basis.

circumstances in which parties are placed give rise to *inferences of oppression* or dealing with a disadvantage or a person's disadvantage with you, it would be best to reserve the Court's decision on [the motion]." (emphasis added).

Challenging the award of punitive damages, Food Fair advances these contentions on appeal:

1) As a matter of law, punitive damages should not have been awarded in this case.

2) The trial judge failed to instruct the jury properly with regard to "actual malice."

3) The lump-sum verdict for punitive damages in favor of both employees, without apportionment, was improper.

4) The allowance of punitive damages absent an underlying award of compensatory damages on the tort counts was improper.

Since we agree with the first contention, it is unnecessary to reach the remaining questions.

In maintaining that the issue of punitive damages should not have been submitted to the jury, Food Fair stresses these facts: that appellees terminated their employment voluntarily; that the separation was amicable and totally lacking in animosity or ill will; and that the decision of the Advisory Committee was not aimed at these particular employees, but was merely a routine business decision arrived at in accordance with established practice. In sum, Food Fair urges that absent here was the actual malice necessary for the recovery of punitive damages.

The employees respond by pointing to the course of action followed by Food Fair in routinely denying benefits under the Plan in other cases of this kind, and to the fact that Food Fair failed to take any remedial action with respect to these two claims in the eleven month interval between the *Greeley* decision and the institution of this law suit.

Although the general rule respecting punitive damages is that they may be awarded where there is "an element of fraud, or malice, or evil intent, or oppression entering into

and forming part of the wrongful act." *P., W. & B. R.R. Co. v. Hoeflich,* 62 Md. 300, 307 (1884), a more stringent rule applies, as we indicated in *H & R Block, Inc. v. Testerman,* 275 Md. 36, 338 A. 2d 48 (1975), where, as here, the tort is one arising out of a contractual relationship. In such situations, punitive damages are recoverable only upon a showing of actual malice. As our predecessors said in the leading case of *Knickerbocker Co. v. Gardiner Co.,* 107 Md. 556, 569-70, 69 A. 405 (1908):

> ". . . We do not mean to say there may not be [punitive] damages in cases of this character, for if, for example, there was evidence tending to show that the defendant had caused the contract to be broken *for the sole purpose, and with the deliberate intention of wrongfully injuring the plaintiff,* exemplary damages might be recovered, *but when the object was merely to benefit itself, although the plaintiff would be thereby injured,* there would be no more reason for allowing such damages than there would be in a suit by one party to a contract against the other for breach of it. . . ." (emphasis added).

This rule has been followed consistently, *H & R Block, Inc. v. Testerman, supra; Siegman v. Equitable Trust Co.,* 267 Md. 309, 314, 297 A. 2d 758 (1972); *Daugherty v. Kessler,* 264 Md. 281, 284, 286 A. 2d 95 (1972); *St. Paul at Chase v. Mfrs. Life Insur.,* 262 Md. 192, 238, 278 A. 2d 12 (1971), *cert. denied,* 404 U. S. 857 (1971); *Damazo v. Wahby,* 259 Md. 627, 639, 270 A. 2d 814 (1970).[4]

Consequently, there appear to be only two Maryland cases in which punitive damages have been allowed for a tort arising out of a contractual relationship. *Rinaldi v. Tana,* 252 Md. 544, 250 A. 2d 533 (1969); *McClung-Logan v. Thomas,*

---

4. Although we recognized in Siegman — a tort case involving conversion and wrongful dishonor by a bank — that there can be cases in which the legal equivalent of actual malice might support an award of punitive damages, we held, in effect, that punitive damages were not recoverable there under any theory, since malice was totally lacking in either form — actual or implied.

226 Md. 136, 172 A. 2d 494 (1961). In describing the actual malice which formed the basis of the punitive damage award in *Rinaldi*, we said in *Damazo*:

"... There, although the per curiam opinion does not reveal it, there was testimony in the record that the interferer had *expressed animosity* towards his sister with whose contract he interfered and *had threatened and indicated a determined purpose to harm her.* Judge Moore, the trial judge, found this brought the case within the holding of the *Knickerbocker* case on punitive damages." *Damazo v. Wahby, supra,* 259 Md. at 639. (emphasis added).

Similarly, actual malice was found in *McClung-Logan,* where the evil and spiteful motive was described by this Court:

"... It was a reasonable and proper inference that appellant became provoked with appellee's numerous requests that the defective condition of the tractor be corrected and that it determined to put a stop to the complaints by seizing the tractor and forcing the appellee to sign a release of all claims that he might have. The validity of this inference was clear in the light of appellant's insistence that appellee release all claims as a condition for appellant's acceptance of the redemption payment it had demanded of appellee and which it had stated it would accept...." *McClung-Logan v. Thomas, supra,* 226 Md. at 149.

As the trial judge clearly recognized, the present case is lacking in any evidence that would support a finding of actual malice, which we have defined as an act performed "with an evil or rancorous motive influenced by hate; the purpose being to deliberately and wilfully injure the plaintiff." *Siegman v. Equitable Trust Co., supra,* 267 Md. at 314. The decision of the Advisory Committee was not directed at the particular employees here, or motivated by

spite or ill will, but was a rational business decision aimed only at denying benefits to employees who opted for employment with a Food Fair competitor. There is no evidence to suggest that the action taken here by the Advisory Committee represented a departure from established procedure; nor that appellees were singled out or treated differently from other participants in the Plan. Indeed, they stipulated during the trial that there was no "ill feeling or animosity" between them and Food Fair when they terminated their employment.

Furthermore, when the decision to deny benefits here was made in May 1970, 20 months prior to this Court's decision in *Greeley*, Food Fair believed itself legally justified, since the weight of authority in other jurisdictions tended to uphold anti-competitive clauses in incentive and bonus plans. *See, e.g., O'Madigan v. General Motors Corporation*, 202 F. Supp. 190 (E.D. Mo. 1961), *aff.* 312 F. 2d 250 (8th Cir. 1963); *Van Pelt v. Berefco, Inc.*, 60 Ill.App.2d 415, 208 N.E.2d 858 (1965); *Flynn v. Murphy*, 350 Mass. 352, 215 N.E.2d 109 (1966). Given this respected line of authority elsewhere and the absence of any Maryland decision to the contrary, one would need to have been endowed with at least a modicum of prescience in May 1970 to foresee that his decision would ultimately be regarded as tortious. In any event, the failure to anticipate this result cannot support an award of punitive damages. It has long been recognized in Maryland that where an act, though wrongful in itself, is committed in the honest assertion of a supposed right or in the discharge of duty, or without any evil or bad intention, there is no ground on which punitive damages can be awarded. *Siegman v. Equitable Trust Co., supra,* 267 Md. at 314; *Associates Discount v. Hillary,* 262 Md. 570, 580, 278 A. 2d 592 (1971); *P., W. & B. R.R. Co. v. Hoeflich, supra,* 62 Md. at 307.

Nor is there any merit in appellees' contention that Food Fair's failure to reinstate their benefits after the *Greeley* decision was announced establishes a case for punitive damages. As we said there, "when the conversion took place, a debtor-creditor relationship came into being between Food

Fair and Greeley." 264 Md. at 121. By no stretch of the imagination, therefore, did we suggest, much less hold, that the conversion might be one which was continuing in nature. Thus, when the wrongful denial of benefits occurred here in May 1970, a debtor-creditor relationship arose which remained extant even after *Greeley* was decided. Pursued to its logical conclusion, the employees' contention in this regard could mean that punitive damages would be recoverable whenever a debtor failed or refused to pay his creditor, and thereby forced the latter to institute legal proceedings. The practical effect then might well be the allowance of punitive damages in a pure action for breach of contract — a proposition which we have flatly rejected. *H & R Block, Inc. v. Testerman, supra; Siegman v. Equitable Trust Co., supra,* 267 Md. at 313; *St. Paul at Chase v. Mfrs. Life Insur., supra,* 262 Md. at 236.

In the final analysis, our holding in *Damazo v. Wahby, supra,* 259 Md. at 638, is dispositive:

"The Maryland rule is that malice in the sense of deliberate and improper violation of a known right, that is, absence of legal justification, will support an action and permit recovery of compensatory damages for deprivation of known *contractual* rights, but that actual malice must be shown to support punitive damages. . . ." (emphasis added).

It was therefore error to dispense with the requirement of actual malice, and to allow punitive damages upon what amounted to an adhesion contract theory. What occurred here was a classic example of "an act, though wrongful in itself, . . . committed in the honest assertion of a supposed right — or in the discharge of duty, . . . without any evil or bad intention . . . ." Hence, there being no evidence of actual malice, there was no basis for awarding punitive damages.

*Judgment for punitive damages
reversed; appellees to pay costs.*