Donna Sue CARUSO

v.

**REPUBLIC INSURANCE COMPANY
and Republic Financial Services, Inc.**

v.

John Anthony CARUSO.

Civ. A. No. M–81–2307.

United States District Court,
D. Maryland.

Feb. 16, 1983.

Steven D. Campen and Joseph W. Powers, Jr., Rockville, Md., for plaintiffs Donna Sue and John Anthony Caruso.

Leon Shampain and Vaughan & Shampain, Riverdale, Md., for defendants.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

This diversity action was brought by Donna Sue and John Anthony Caruso to recover under a homeowner's insurance contract issued by Republic Insurance Company, a wholly owned subsidiary of Republic Financial Services, Inc. The plaintiffs' home, which was owned by them as tenants by the entireties, was damaged by fire on January 14, 1980. The plaintiffs filed a claim with the defendants, but were denied recovery on the insurance policy. They then filed this action on September 11, 1981.

The present action was originally brought against Republic Financial Services, Inc. only. Subsequently, Republic Insurance Company was named as the sole defendant on June 7, 1982[1] and the complaint was again amended[2] on July 16, 1982 to include both defendants.[3] Finally, the court ordered the plaintiffs to file a third amended complaint to correct jurisdictional deficiencies.[4] The defendants answered[5] the second amended complaint on August 13, 1982 but have not filed an answer to the third amended complaint. On August 20, 1982, while the plaintiffs' motion for summary judgment[6] was pending, the defendants moved for leave to file a counterclaim.[7] The court heard oral argument on the motions for summary judgment and for leave to file a counterclaim on September 13, 1982.[8] The court granted the motion for summary judgment of the plaintiff Donna Sue Caruso on the issue of liability only[9] and granted defendants' motion for leave to file a counterclaim[10] against the plaintiff John Caruso. Subsequent to the plaintiff John Caruso's voluntary dismissal of his claim, plaintiff Donna Sue Caruso (hereinafter the plaintiff) moved for reconsideration of the court's grant of leave to file a counterclaim.[11] This motion is currently pending and has been opposed.[12] It requires no hearing. Local Rule 6(E). Also pending is the defendants' motion for sum-

---

1. Paper No. 38.

2. Paper No. 87.

3. Paper No. 51.

4. Paper No. 90.

5. Paper No. 67.

6. Paper Nos. 28 and 71.

7. Paper No. 75.

8. Counsel for the defendants failed to appear for the hearing scheduled by Order dated June 7, 1982.

9. Paper Nos. 85, 93 and 94.

10. Paper No. 92.

11. Paper Nos. 99 and 108.

12. Paper No. 106.

mary judgment on Count II [13] which is also opposed,[14] but requires no additional oral hearing beyond that afforded previously.[15] The plaintiff has moved to strike this motion as untimely [16] which motion has been opposed [17] and requires no hearing.

The plaintiff filed motions to compel [18] which were granted in part and held *sub curia* in part awaiting further briefing by the plaintiff.[19] These motions, too, are ready for decision without further hearing. Finally, on January 17, 1983 the plaintiff filed a "Motion to Bifurcate Trials on Plaintiff's Claim and Defendants' Counterclaim" [20] and "Motion in Limine and To Protect".[21]

*Motion of Defendants for Summary Judgment on Count II and Plaintiff's Motion to Strike*

The defendants moved orally to dismiss Count II during the hearing on September 22, 1982. The court granted the defendants additional time to file a memorandum supporting their proposition that no cause of action on Count II exists under Maryland law. In lieu of filing the memorandum, the defendants filed a motion for summary judgment as to Count II with supporting affidavits. The plaintiff moved to strike the motion for summary judgment on the ground that it was filed outside the time limit set by this court in its Order dated June 11, 1982.

The court entertained the oral motion of the defendants to dismiss Count II at the September 22, 1982 hearing. The plaintiff raised no objection at that time. Although the motion for summary judgment filed subsequently is not strictly in conformity with the court's order,[22] it nevertheless addresses an important element in this action presenting a novel issue under Maryland law. The court believes it appropriate to permit the defendants to raise whatever defenses they may have. This is particularly true since the court invited the defendants to supply a supporting memorandum of law. That the defendants chose to file a motion for summary judgment in lieu of the legal memorandum does not preclude consideration of the basic issue. The plaintiff's motion to strike will be denied.

Count II alleges that the defendants "willfully, wantonly and maliciously" breached their covenant of good faith to the plaintiff, Donna Sue Caruso, "by entering on a course of conduct designed to discourage [plaintiff's] lawful claim to compensation under the policy and by ultimately refusing to make payment in accordance with the terms of the policy." [23] The plaintiff argues that these allegations constitute a tort separate from the contract action alleged in Count I.

The Court of Appeals of Maryland has not expressly recognized a tort cause of action for the breach of duty of good faith and fair dealing in first party insurance claims. In Maryland a cause of action for breach of fair dealing and good faith has been limited to claims by the insured against its insurer for failure to settle third-party liability claims for amounts within the policy limits, *Travelers Indemnity Co. v. Rosedale Passenger Lines, Inc.,* 450 F.2d 975, 978 (4th Cir.1971); *Hartford Casualty Ins. Co. v. Dodd,* 416 F.Supp. 1216 (D.Md.1976); *Sobus v. Lumbermens Mutual Casualty Co.,* 393 F.Supp. 661, 671 (D.Md. 1975); *American Mutual Ins. Co. v. Bittle,* 26 Md.App. 434, 338 A.2d 306 (1975); *State Farm Mutual Automobile Ins. Co. v. White,* 248 Md. 324, 328–33, 236 A.2d 269 (1967);

---

13. Paper No. 103.

14. Paper No. 97.

15. The parties had an opportunity to address these issues at a September 22, 1982 hearing.

16. Paper No. 98.

17. Paper No. 105.

18. Paper Nos. 83 and 84.

19. Paper No. 94.

20. Paper No. 114.

21. Paper No. 113.

22. Paper No. 94 at ¶ 3.

23. Third Amended Complaint at 5 ¶ 22.

*Sweeten v. National Mutual Ins. Co.,* 233 Md. 52, 194 A.2d 817 (1963).

Numerous other states, however, have adopted a cause of action for an insurer's bad faith delay in making payment on a claim. *See Escambia Treating Co. v. Aetna Casualty & Surety Co.,* 421 F.Supp. 1367 (N.D.Fla.1976); *Carter v. Hartford Accident & Indemnity Co.,* 423 F.Supp. 827 (E.D.Va.1976); *John Hancock Life Ins. Co. v. McNeill,* 27 Ariz.App. 502, 556 P.2d 803 (Ariz.App.1976); *Silberg v. California Life Ins. Co.,* 11 Cal.3d 452, 113 Cal.Rptr. 711, 521 P.2d 1103 (Cal.1974); *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (Cal.1973); *Grand Sheet Metal Prod. Co. v. Protection Mutual Ins. Co.,* 34 Conn.Sup. 46, 375 A.2d 428 (Conn.1977); *Amsden v. Grinnell Mutual Reinsurance Co.,* 203 N.W.2d 252 (Iowa 1972); *United States Fidelity & Guaranty Co. v. Peterson,* 91 Nev. 617, 540 P.2d 1070 (Nev.1975); *State Farm Gen. Ins. Co. v. Clifton,* 86 N.M. 757, 527 P.2d 798 (N.M.1974); *Chavez v. Chenoweth,* 89 N.M. 423, 553 P.2d 703 (N.M. App.1976); *Anderson v. Continental Ins. Co.,* 85 Wis.2d 675, 271 N.W.2d 368 (Wis. 1978). *Accord United Services Automobile Ass'n v. Werley,* 526 P.2d 28 (Alaska 1974). The duty breached in these cases is described as the breach of a duty of fair dealing implied by law.

Other courts have adopted a cause of action for the insurer's breach of a duty imposed by statute to pay insurance claims promptly. *Key Life Ins. Co. v. Mitchell,* 129 Ga.App. 192, 198 S.E.2d 919 (Ga.App.1973); *Eckenrode v. Life of America Ins. Co.,* 470 F.2d 1 (7th Cir.1972) (anticipating decision of Illinois Supreme Court in *Ledingham v. Blue Cross Plan,* 29 Ill.App.3d 339, 330 N.E.2d 540 (Ill.App.1975), *rev'd on other grounds,* 64 Ill.2d 338, 1 Ill.Dec. 75, 356 N.E.2d 75 (1976)); *Matthews v. Travelers Ins. Co.,* 212 Kan. 292, 510 P.2d 1315 (Kan. 1973); *Citizens Discount and Investment Corp. v. Dixon,* 499 S.W.2d 231 (Mo.App. 1973); *Frizzy Hairstylists, Inc. v. Eagle Star Ins. Co.,* 89 Misc.2d 822, 392 N.Y.S.2d 554 (Civ.Ct.N.Y.1977); *Christian v. American Home Assurance Co.,* 577 P.2d 899 (Okl. 1977); *Gulley v. National Life Ins. Co.,* 73

So.2d 341 (La.App.1954). *See also* 3 J. Appleman, *Insurance Law & Practice,* ¶ 16.01 *et seq.* (1967); Gilardy, *Good Faith and Fair Dealing in Insurance Contracts: Gruenberg v. Aetna Ins. Co.,* 25 Hastings L.J. 699 (1974); Keeton, *Ancillary Rights of the Insured Against His Liability Insurer,* 13 Vanderbilt L.Rev. 837 (1960).

The reasoning of the courts adopting the cause of action is typified by the decision of the California court in *Gruenberg, supra.* In *Gruenberg,* the California Supreme Court upheld the insured's right to proceed in tort against his insurers for their willful and bad faith refusal to compensate for losses covered by fire policies. The court set forth the following analysis of the insurer's implied duty of good faith and fair dealing, and rejected the contention asserted by the defendant here, that the duty of good faith applies only in handling claims of third persons against insureds. The court stated

"[t]he duty of an insurer to deal fairly and in good faith with its insured is governed by our decisions in *Crisci v. Security Ins. Co.* [66 Cal.2d 425, 58 Cal.Rptr. 13], 426 P.2d 173 (Cal.1967) and *Comunale v. Traders & General Ins. Co.,* 50 Cal.2d 654 [328 P.2d 198] (1958). We explained that this duty, the breach of which sounds in both contract and tort, is imposed because [there] is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. [*See Restatement, Law of Contracts,* ¶ 231, *infra.*]

"Thus, . . . we made it clear that [l]iability is imposed [on the insurer] not for a bad faith breach of contract but for failure to meet the duty to accept reasonable settlements, a duty included within the implied covenant of good faith and fair dealing . . . . In those two cases, we consider the duty of the insurer to act in good faith and fairly in handling the claims of third persons against the insured, described as a 'duty to accept reasonable settlements.' In the case before

us we consider the duty of an insurer to act in good faith and fairly in handling the claim of an insured, namely a duty not to withhold unreasonably payments due under a policy. These are merely two different aspects of the same duty. That responsibility is not the requirement mandated by the terms of the policy itself—to defend, settle or pay, it is the obligation, deemed to be imposed by the law, under which the insurer must act fairly and in good faith in discharging its contractual responsibilities. When in so doing, it fails to deal fairly and in good faith with its insured, by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing. It is manifest . . . that in every insurance contract there is an implied covenant of good faith and fair dealing. The duty to act is imminent in a contract whether the company is attending to claims of third persons against the insured or the claims of the insured itself. Accordingly, when the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort." 108 Cal.Rptr. at 484–85, 510 P.2d at 1036–37.

While this court is convinced of the soundness of a rule imposing liability on an insurer for the consequences of its failure to settle claims promptly, it is also convinced, having reviewed Maryland law, that the Maryland appellate courts would not recognize a separate tort based on such allegations. This is because the Court of Appeals of Maryland has adopted a substantial body of law relating to those hybrid causes of action having elements of both tort and contract.

"There is . . . a class of actions that lies somewhere in the gray areas separating pure torts from contract cases. These are the so-called 'torts arising out of contractual relationships' which occasioned the genesis of the rule in *[H & R Block, Inc. v.] Testerman,* [275 Md. 36, 338 A.2d 48 (1975)]. Such torts 'frequently bear close resemblance to actions for pure breach of contract' in which punitive damages are not recoverable. *Wedeman v. City Chevrolet,* 278 Md. [524] at 529 [366 A.2d 7]. Nevertheless, torts of this genre often involve conduct of the most opprobrious kind, which society might well seek to punish and deter by means of exemplary damages. Recognizing that torts arising out of contractural relationships exhibit characteristics of both tort and contract actions, we sought in *Testerman* to fashion a workable rule governing the law of punitive damages which would be more stringent than that applied in pure tort cases, but which at the same time would allow the possibility of recovery where the particular conduct clearly warranted the imposition of such damages."

*General Motors Corp. v. Piskor,* 281 Md. 627, 639, 381 A.2d 16 (1977).

The rule fashioned in *Testerman* was "where the tort is one arising out of a contractual relationship, actual malice is a prerequisite to the recovery of punitive damages." 275 Md. at 47, 338 A.2d 48.

■  There is no doubt that the tort alleged here is one arising out of a contractual relationship. A tort will be deemed to arise out of a contractual relationship if "the tortious conduct and the contract were so intertwined that one could not be viewed in isolation from the other," or in other words, if, "[i]n one form or another, then, the tort arose directly from performance or breach of the contract." *Piskor, supra,* 281 Md. at 637, 381 A.2d 16.

In *Food Fair Stores v. Hevey,* 275 Md. 50, 338 A.2d 43 (1975), the defendant refused to pay retirement benefits to former employees who had allegedly violated an anti-competition clause contained in the written document creating the benefits. Because the anti-competition clause had previously been declared to be an invalid restraint upon the employees' right to earn a livelihood, *Food Fair Stores v. Greeley,* 264 Md. 105, 285 A.2d 632 (1972), the refusal to pay the benefits was held to constitute a conversion and was therefore a tort arising out of contrac-

tual relationship. Similarly in *Henderson v. Maryland Nat'l Bank,* 278 Md. 514, 366 A.2d 1 (1976), the court held that a conversion stemming from the wrongful repossession of an automobile was conduct arising out of a contractual relationship since the bank had breached the conditional sales contract by seizing the automobile despite the absence of any delinquency or other grounds justifying such action.

■ The allegations in this case, that the insurer failed to pay a claim when it had no good faith defense to payment under the terms of the insurance contract, are analogous to those in *Hevey.* As in *Hevey,* the alleged unjustified withholding of payments by the insurer here, if true, constitutes the tort of conversion. The conversion is sufficiently intertwined with the insurance contract, as it was with the employment contract in *Hevey,* as to fit the Court of Appeals' definition of a tort arising out of a contractual relationship.

The rule laid down in *Testerman* and *Hevey* are not merely limitations on punitive damage awards in contract actions, but are also limitations on tort actions themselves. Both *Testerman* and *Hevey* were brought as tort actions. The court, however, impliedly re-characterized the causes of action as ones arising out of a contractual relationship and subsequently fashioned its rule regarding punitive damages. The court did not permit the allegation in tort alone to stand because to do so would have permitted the tort allegations alone to support an award of punitive damages under the traditional standard and would have circumvented the court's imposition of a higher standard for actions arising out of contract. Similarly, if this court were to recognize a separate tort in the circumstance of this case, the Court of Appeals standard would be circumvented.

Furthermore, every contractual relationship imposes a duty of good faith and fair dealing, *see Restatement, Law of Contracts, 2nd* ¶ 231 (1973) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.") If a separate tort were recognized each time a contract was breached, the rule denying punitive damages in pure contract actions would be circumvented. In the absence of legislation, such as that which exists in other states, creating a unique heightened duty on the part of insurers to deal in good faith *beyond* that which is required in every contract, a separate cause of action in tort cannot be said to exist.

Those Maryland cases recognizing a tort action for a failure of insurers to settle third party liability claims within the policy limits are distinguishable. Liability insurance policies which give to the insurer exclusive control of the investigation, settlement and defense of any claim against the insured, create a "potential, if not actual, conflict of interest, giving rise to a fiduciary duty." *Sweeten v. National Mutual Ins. Co.,* 233 Md. 52, 55, 194 A.2d 817 (1963). It is the breach of this separate fiduciary duty which gives rise to the separate tort action recognized in *Sweeten, supra,* and the other Maryland third party liability actions cited previously. No such potential or actual conflict exists between the actual parties to an insurance contract.

In summary, the court concludes that Count II does not state a separate and distinct tort from the contract claim alleged in Count I. While the decision here with respect to first party claims may seem harsh, it does not preclude insureds from seeking punitive damages when insurers refuse or delay payment; it merely elevates the standard for recovery.[24]

■ Where the tort does not arise from a contractual relationship, the malice necessary to warrant punitive damages has been defined as "conduct of an extraordinary nature characterized by a wanton or reckless disregard for the rights of others." *Wedeman v. City Chevrolet Company, su-*

---

**24.** Although not alleged in the present complaint, a cause of action for intentional infliction of emotional distress may be stated under the circumstances of this case. *See, e.g., Sere v. Group Hospitalization, Inc.,* 443 A.2d 33 (D.C.App.1982).

pra 278 Md. at 532, 366 A.2d 7; *St. Paul at Chase v. Manufacturers Life Ins.,* 262 Md. 192, 239, 278 A.2d 12 (1971). Where it does arise out of a contractual relationship, actual or expressed malice must be shown. It has been characterized as "the performance of an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *Testerman* 275 Md. at 43, 338 A.2d 48. *See Drug Fair v. Smith,* 263 Md. 341, 283 A.2d 392 (1971).

Punitive damages under the contract claim would be recoverable in a proper case. They have not been sought under Count I in this case and although the court would under usual circumstances exercise its discretion to permit amendment of the pleadings, it will not do so here for the reason that to do so would be futile.

■ The standard for recovery of punitive damages where a tort arises out of a contractual relationship, as has already been stated, is the "performance of an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose [being] to deliberately and willfully injure the plaintiff." *Testerman, supra.* Under the undisputed facts of this case, the plaintiff as a matter of law cannot meet this standard.

■ The fire which destroyed the insured property in this case occurred on January 14, 1980. It is undisputed that the property was owned by Mr. and Mrs. Caruso as tenants by the entirety, that Mr. Caruso was suspected of arson for setting the subject fire, and that he eventually pled guilty to attempted arson. Furthermore, it is undis-puted that the insurer, at least in part, relied on Mr. Caruso's criminal activities as a reason for denying recovery to both plaintiffs.[25] Finally, it is undisputed that under Maryland law, as it existed at the time of the fire and at the time of the claim, the defendants had a colorable defense to the claims of both plaintiffs.

There is a dispute, however, regarding when the Maryland law changed. Under the law prior to the decision in *St. Paul Fire & Mar. Ins. Co. v. Molloy,* 291 Md. 139, 433 A.2d 1135 (1981) (hereinafter *St. Paul*), the issue was undecided whether the arson of one tenant of a tenancy by the entirety was to be treated as the misconduct of both, precluding recovery by both. *See St. Paul* at 147, 433 A.2d 1135. *St. Paul* was decided by the Court of Appeals on August 26, 1981. It was not until this date that it was decided in Maryland that a co-tenant of a tenancy by the entirety could recover on a fire insurance policy despite the fact that the fire was caused by the arson of the other co-tenant.[26] This suit was filed on September 11, 1981, and it is uncontested that the defendants' counsel was not aware of the Court of Appeals decision in *St. Paul* at that time.[27] Therefore, the court finds the defendants had a colorable defense, providing an absolute defense to a finding of bad faith, at least until the time suit was filed.

The Court of Appeals decision in *Hevey* precludes, as a matter of law, a showing by the plaintiff of bad faith subsequent to the filing of this suit. In *Hevey,* the plaintiffs contended that the defendant's bad faith was established by its failure to reinstate their benefits during the eleven months their suit was pending after the decision in *Greeley, supra,* which determined conclu-

**25.** Deposition of Burroughs at 37; Affidavit of plaintiff's counsel at ¶ 4.

**26.** Although the plaintiff's counsel, Joseph W. Powers, Jr., has sworn in an affidavit accompanying the plaintiff's opposition to the defendants' motion for summary judgment that this issue was decided on October 9, 1980 by the Maryland Court of Special Appeals in *St. Paul Fire & Mar. Ins. Co. v. Molloy,* 46 Md.App. 570, 420 A.2d 994 (1980), it is clear plaintiff's counsel has misread the case. The Court of Special Appeals expressly declined to reach the issue

of the co-tenant's recovery, *id.,* at 574, 420 A.2d 994, because it determined that the insurer had waived any defense of arson.

**27.** Affidavit of Leon Shampain at ¶ 5. It is not unreasonable that defendants' counsel would be unaware of the decision until after September 11, 1981 since, to the court's knowledge, the decision in *St. Paul* first appeared in published form in *The Daily Record,* Baltimore, Md. on November 17, 1981.

sively that they were entitled to benefits. The *Hevey* court stated:

"[T]here [is no] merit in [plaintiffs'] contention that [the defendant's] failure to reinstate their benefits after the *Greeley* decision was announced establishes a case for punitive damages. As we said there, 'when the conversion took place, a debtor-creditor relationship came into being between [the defendant and plaintiff].' 264 Md. at 121. By no stretch of the imagination, did we suggest, much less hold, that the conversion might be one which was continuing in nature. Thus, when the wrongful denial of benefits occurred here in May 1970, a debtor-creditor relationship arose which remained extant even after *Greeley* was decided. Pursued to its logical conclusion, the employees' contention in this regard would mean that punitive damages would be recoverable whenever a debtor failed or refused to pay his creditor and thereby forced the latter to institute legal proceedings. The practical effect then might well be the allowance of punitive damages in a pure action for breach of contract—a proposition that we had flatly rejected."

275 Md. at 56–57, 338 A.2d 43 (citations omitted).

Having already concluded that the alleged bad faith failure to pay in this case created a relationship similar to that in *Hevey,* this court is constrained to find that the plaintiff herein, like the plaintiffs in *Hevey,* cannot prove punitive damages on a theory of a continuing conversion. The motion of defendants for summary judgment on Count II will be granted.

*Plaintiff's Motion to Compel*

The plaintiff moved to compel answers to questions asked at depositions, for documentary evidence and for sanctions.[28] These motions are opposed by the defendants. In light of this court's ruling on the defendants' motions to dismiss and for summary judgment, much of the discovery material sought by the plaintiff is now irrele-

vant. The plaintiff's questions to Mr. Burroughs regarding the charter and by-laws of both defendants, however, are not irrelevant and the defendants' objections to these questions are without merit.

The defendants will be ordered to produce the charters and by-laws of the defendants. The documentary evidence sought concerning Mr. Burroughs' review of the Caruso file shall be ordered produced also as it may be relevant to the plaintiff's proof of damages. The defendants' broad objection to production on the ground of privilege, without further explanation, is meritless.

The plaintiff's motion for sanctions will also be granted to the extent that the defendants shall be required to pay plaintiff's costs, including attorneys' fees, of filing her motions to compel. This order will be entered after the plaintiff provides the court with an itemized affidavit setting forth the costs.

*Motions to Reconsider and To Bifurcate Trial*

The plaintiff has requested the court to reconsider its Order granting leave to the defendants to file a counterclaim.[29] In lieu of reconsideration the plaintiff has also moved to bifurcate the trials on the plaintiff's claim and the defendants' counterclaim.[30] The court granted the motion for leave to file the counterclaim in the interest of judicial economy and does not believe the plaintiff's contentions of prejudice require a contrary ruling. The motion to reconsider will be denied.

The plaintiff's motion to bifurcate the trials is without merit also. The plaintiff's concern that prejudicial material may be introduced does not outweigh the interests of sound judicial administration in trying the claims together. This is particularly true since the issue of liability has already been decided in the plaintiff's favor.

**28.** Paper Nos. 83, 84 and 100.

**29.** Paper No. 99.

**30.** Paper No. 114. Response at Paper No. 116. Reply at Paper No. 117.

*Plaintiff's Motion in Limine and To Protect*

 The plaintiff has filed a motion in limine and to protect [31] requesting that evidence of any alleged extramarital relationships on her part be excluded from trial and that she not be required to produce a copy of the lease for the property the defendants contend she shared with a Mr. Thibodeau. While the plaintiff's personal relationships are not directly at issue, her expenses in seeking alternative housing, after the fire damage to her home, are. Therefore, the plaintiff's motion will be denied. Any specific objections the plaintiff may have under Rule 403, Fed.R.Evid., or on grounds of relevance will be decided at trial.

Accordingly, it is this 16th day of February, 1983, by the United States District Court for the District of Maryland, ORDERED:

(1) The plaintiff's motion to strike (Paper No. 98) is DENIED.

(2) The defendants' oral motion to dismiss Count II and the motion for summary judgment on said count are GRANTED.

(3) The plaintiff's motion to compel answers to questions asked at depositions (Paper No. 83) is GRANTED in part and DENIED in part as set forth above.

(4) The plaintiff's motion for documentary evidence (Paper No. 84) is GRANTED in part and DENIED in part as set forth above.

(5) The plaintiff's request for sanctions (Paper Nos. 83 & 84) is GRANTED to the extent that the defendants shall be ordered to pay the plaintiff's expenses, including attorneys' fees, at such time as the court receives an itemized affidavit from the plaintiff setting forth her expenses.

(6) The plaintiff's motion for reconsideration (Paper No. 99) is DENIED.

(7) The plaintiff's motion to bifurcate the trial (Paper No. 114) is DENIED.

(8) The plaintiff's motion in limine and to protect is DENIED in part and GRANTED in part as set forth above.

(9) The Clerk shall forward a copy of this Memorandum and Order to counsel for the parties.