CANNON, A MINOR, BY MARY F. CANNON, GUARDIAN AD LITEM ET AL. *v.* SOUTHLAND LIFE INSURANCE COMPANY

[No. 62, September Term, 1971.]

*Decided November 15, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and DIGGES, JJ.

*Richard L. Polin,* with whom were *Michael J. Lambros, Russell J. White* and *Hearne, Fox & Bailey* on the brief, for appellants.

*Henry M. Rutledge,* with whom were *Raymond S. Smethurst, Jr.,* and *Adkins, Potts & Smethurst* on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

*Simpson v. Prudential Ins. Co.,* 227 Md. 393, in which Judge Brune, for the Court, painstakingly, exhaustively and ably reviewed the underlying authorities, and *Peoples Life Insurance Company v. Medairy,* 255 Md. 534, which followed *Simpson,* not only chronologically but as a sound controlling precedent, control here and dictate the result Southland Life Insurance Company, appellee, seeks and the result the trial court reached. In *Simpson* the claimant was a wife who was the beneficiary under an insurance policy on the life of her husband, which she claimed the insurance company had bindingly contracted to issue. She sued after her husband was killed in a motor vehicle accident while his application for the insurance coverage was pending.

Here the claimants are a mother, Rosa Culp, the named beneficiary under a disability income, accident

and sickness policy on her sixteen-year old son, William Bromley, which she claimed the insurance company had bindingly contracted to issue, and Tony Leroy Cannon, a sixteen-year old youth who had contemporaneously applied for similar insurance coverage. Bromley was killed and Cannon injured in a motor vehicle accident while their applications for the insurance coverage were pending. In *Simpson* and here a first premium was paid to the agent. We said in the third sentence of *Simpson*: "the principal question presented is the construction of the husband's application for insurance and of a 'conditional receipt' issued by the insurance company upon payment of the first annual premium." The same decisive question is presented in the present case, and, in a declaratory judgment action brought by Southland, a Texas insurer licensed in Maryland, Judge Travers declared summarily that Southland had not insured either Bromley or Cannon by accepting their applications and premiums and issuing the conditional receipts since each was too young to be insured for the coverage applied for under Southland's honest objective age standards of insurability. We think his decision correctly reflected the controlling Maryland law set forth in *Simpson* and *Medairy*.

The affidavits in the present case disclose that William Culp desired to increase the insurance coverage on three youthful employees of his, one McDorman, Cannon, and his stepson Bromley, each being sixteen years old. On May 23, 1969 J. Paul Briddell went to Culp's home and took the applications of the three youths for disability income policies with a $5,000 accidental death rider. Part of the application process was for the agent to sign, detach from the application form and deliver to each applicant a conditional receipt acknowledging payment by Mr. Culp's check dated May 26, 1969 of the first quarterly premium. The claimants say Briddell told them the insurance would be effective immediately; Briddell says he told them the insurance would be in force from the date of the check (three days later). Judge Travers held

that "in [my] view of the case, this difference in testimony is immaterial." We agree.

Each application form stated that the answers therein were complete and true and that:

> "I [the undersigned] agree that there shall be no liability under this application until a policy shall be issued and manually delivered to me during my lifetime and continued insurability * * * but when so delivered and paid for, the policy shall be in force from the date shown thereon, provided that if the first premium is paid in cash at the time of making this application, the Conditional Receipt is completed and given to me, the insurance (subject to the terms of the policy applied for) shall be effective as stated in said Conditional Receipt."

Provisions of the conditional receipt are printed on both sides. The front read:

> "IMPORTANT: The payment of the first premium acknowledged by this receipt is received in connection with an application corresponding in date and number with this receipt, and no insurance shall be effective hereunder unless the conditions set forth on the reverse side hereof are fully satisfied.
>
> "Received from ..... ................ .. ...... the sum of $ ........ ..... (in cash or valid check) for the first full premium on the policy applied for. * * * If the application is not approved, the sum collected will be returned."

The reverse side read as follows:

> "Subject to the conditions and waiting period of the policy, the benefits, as applied for, will be considered as having been in force from the date of the execution of this receipt by the Company's agent, provided the following conditions are satisfied:

1. The application is approved by the Company at its home office without modification, and the proposed insured and all proposed covered members (if any) are acceptable risks on the date of the application according to the underwriting rules of the Company on the plan, for the amount and at the premium rate applied for.

2. * * *

"Neither the agent nor the medical examiner is authorized to accept risks or pass upon insurability, to make or modify contracts, or to waive any of the Company's rights or requirements or otherwise bind the Company in any way by any promise or statement."

Southland had on file with the Insurance Commissioner of Maryland a rate book which reflected Southland's settled course of action to insure under disability insurance policies only individuals between the ages of 25 and 55 years. Some months after the date of the rate book Southland sent to all underwriters a memorandum that read:

"Disability Income Rates Below Age 25

"For several weeks now we have been uncertain how to handle applications on persons under age 25. I suggest that for the future we consider anyone from age 20 through 25 at the same premium rate charged for a person age 25. From an underwriting standpoint, we will need to be very selective in issuing contracts on persons in this age group, but there are some applicants where the insurance is justified and can be issued."

Apparently Briddell and the regional manager of Southland, one Wheelbarger, either did not remember, or chose optimistically to ignore the regulation of Southland that the general minimum age for disability in-

sureds was twenty-five, or in selected instances, twenty. Briddell quoted the sixteen-year old applicants the premium rates set out in the rate book for twenty-five year olds.

On May 25, two days after the boys had signed the applications and received the conditional receipts, there occurred the accident in which Bromley was killed and Cannon injured.

Briddell, aware of the accident, delivered the applications to his district manager, Wheelbarger, who forwarded the McDorman and Cannon applications to Southland's home office with no notations as to the accident. They were routinely declined by the underwriting department, which had no knowledge of the accident, in the regular course of business for the stated reason that the applicants were under the minimum age for this type of insurance. The Bromley application with proof of loss forms attached was sent to Dallas later, and rejected for the same stated reason as the other two.

Wheelbarger then, on Southland's order, tendered the premium paid to Cannon and Rosa Culp, who rejected the tender and demanded insurance proceeds instead. Southland then instituted the suit which is now before us.

Appellants argue that (1) Briddell knew the applicants were but sixteen years old when he accepted their applications and his knowledge is Southland's knowledge, and Southland is estopped to use age as a reason for declining to insure; (2) since Southland had insured certain applicants who were younger than twenty-five, it had waived its standard of not insuring persons under twenty-five; and (3) Southland's age standard of insurability was not an objective standard within the rule of *Simpson* and *Medairy*.

We think that these contentions are foreclosed by holdings of *Simpson* and *Medairy* and the instant facts.

In *Simpson* the application, which was in two parts, non-medical and medical (after examination), specified that no agent had the authority to vary the application

or bind the company by a promise or representation. The conditional receipt provided that if after receipt of the completed parts one and two of the application, the company "determines to its satisfaction that the proposed insured was insurable on the later of the dates of said Parts 1 and 2," the insurance if granted would take effect as of the later of the dates. Much of the argument the appellants make here was made in *Simpson.* The Court said there (pp. 398-399 of 227 Md.) :

> "We agree with the learned trial judge that the agent lacked authority to bind the company by the statement as to immediate coverage attributed to him by the plaintiff. The absence of such power was clearly set forth not only in the application, but in the receipt itself, upon which the plaintiff's claim must stand or fall."

The Court then discussed at some length the various views as to conditional receipts that have been taken by the authorities and said (p. 406) :

> "We think the clause [in the conditional receipt] means that the applicant must meet an objective standard of insurability, and that this standard is the company's own standard for the plan, the amount and the benefits applied for, and at the rate applied for. Honest satisfaction is the standard usually applied under contracts calling for the satisfaction of a party, in the absence of some clear indication to the contrary. * * *
>
> "The burden is, of course, on the plaintiff to show that the proposed insured met the objective test of insurability. The evidence does not make it clear whether he did or did not do so. * * * Evidence of insurability of the applicant according to the general standards of the industry would, we think, be sufficient to establish a *prima facie* case for the plaintiff. This the de-

fendant might rebut by proof of its own objective standard (if different), or by evidence to show that the applicant did not meet this standard (whether the same as the general standard or different from it), or by evidence to support both of these contentions."

In the present case by virtue of the terms of the application and of the conditional receipt and the payment and acceptance of the premium amount, a contract in plain, simple and understandable terms was created, not of immediate insurance but of back-dated coverage of the type applied for if the applicant met Southland's good faith standards of insurability for that type of coverage. The contract of insurance would come into being only if the application was accepted. *Simpson* at p. 403 of 227 Md. Southland promised to insure only if the applicant was an "acceptable risk" on the date of application "according to the underwriting rules of the Company on the plan, for the amount and at the premium rate applied for." The applicants here could not meet the company's requirements of insurability because they were too young. Age is certainly as an objective standard as a condition of health. There is nothing to the argument that because Southland had insured and would insure selected risks as young as twenty that it had abandoned or waived its age requirements. The applicants were all younger than twenty and would not have qualified even if Southland had lowered the general minimum of twenty-five to twenty before they made application. Appellants failed to meet the burden of proof which rested upon them to show that the applicants met Southland's honest objective standard of insurability and Southland proved that they did not. The judgment below properly was in favor of Southland. *Medairy* at p. 549 of 255 Md.

*Judgments affirmed, with costs.*