**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-1877

BALTIMORE COUNTY, MARYLAND, a body Corporate
and Politic,

                                  Plaintiff - Appellant,

        versus

CIGNA  HEALTHCARE;  CIGNA  CORPORATION;  ART
JOHNSON;  CIGNA  HEALTHCARE  MID-ATLANTIC,
INCORPORATED,

                                  Defendants,

        and

CONNECTICUT GENERAL LIFE INSURANCE COMPANY,

                                  Defendant - Appellee.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   Catherine C. Blake, District Judge.
(1:05-cv-00511-CCB)

Argued:  March 12, 2007          Decided:  June 5, 2007

Before WILKINSON, MICHAEL, and KING, Circuit Judges.

Vacated in part, reversed in part, and remanded by unpublished
opinion.  Judge King wrote the majority opinion, in which Judge
Michael joined.  Judge Wilkinson wrote a dissenting opinion.

**ARGUED:** Jeffrey Grant Cook, Assistant County Attorney, BALTIMORE COUNTY OFFICE OF LAW, Towson, Maryland, for Appellant. Michael Patrick Cunningham, FUNK & BOLTON, P.A., Baltimore, Maryland, for Appellee. **ON BRIEF:** John E. Beverungen, County Attorney, BALTIMORE COUNTY OFFICE OF LAW, Towson, Maryland, for Appellant. Bryan D. Bolton, Hisham M. Amin, FUNK & BOLTON, P.A., Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

KING, Circuit Judge:

Plaintiff Baltimore County, Maryland, ("Baltimore County" or the "County") appeals from the district court's Memorandum and Order denying its motion to remand this lawsuit to state court and denying its motion to file a Second Amended Complaint. See Baltimore County v. Cigna Corp., CCB-05-511 (D. Md. Aug. 3, 2005) (the "Opinion"). Baltimore County initially filed suit in Maryland state court, but Connecticut General Life Insurance Company ("Connecticut General"), one of the defendants, removed the proceeding to the District of Maryland. The district court then dismissed the non-diverse defendants, Art Johnson and Cigna Healthcare Mid-Atlantic, Inc. ("Cigna HMA"), from the action, relying on the doctrine of fraudulent joinder, and concluded that it possessed diversity jurisdiction. After discovery, the court awarded summary judgment to Connecticut General, the only remaining defendant. See Baltimore County v. Conn. Gen. Life Ins. Co., CCB-05-511 (D. Md. July 14, 2006).

Baltimore County contends that the court erred in its conclusion that it possessed jurisdiction, in its denial of the County's motion to file a Second Amended Complaint, and in its award of summary judgment to Connecticut General. As explained below, we agree with the County that Connecticut General failed to establish that Johnson was fraudulently joined in this lawsuit. We therefore vacate the court's summary judgment award, reverse its

3

holding that it possessed jurisdiction, and remand to permit a further remand to the appropriate state court.

I.

A.

This civil action stems from a group life insurance policy (the "Policy") issued by Connecticut General, a subsidiary of Cigna Corporation, covering Baltimore County's employees.[1] The Policy had been in effect since 1966 and was written by a predecessor of Connecticut General. Connecticut General acquired the Policy in 1991 and reissued it under its own name in 1993. The Policy requires Baltimore County to make monthly premium payments to Connecticut General in return for life insurance coverage for Baltimore County's employees. A portion of these monthly payments was allocated by Connecticut General into two reserve funds: the Incurred But Not Reported Reserve (the "IBNR"), and the Premium Stabilization Reserve (the "PSR"). The IBNR was originally established by Connecticut General to pay claims incurred during a policy year but not reported until after the policy year ended. It was not subject to or created under the Policy, and there was no

_____

[1]The facts underlying this appeal are drawn from the record created in the district court and are presented in the light most favorable to Baltimore County. See Mayes v. Rapoport, 198 F.3d 457, 464 (4th Cir. 1999) (concluding that, when evaluating a motion for remand, all legal and factual disputes must be resolved in favor of the plaintiff).

4

written agreement between the County and Connecticut General concerning how the balance in the IBNR would be distributed if the Policy was terminated.

The PSR was created pursuant to an amendment to the Policy in 1970. The PSR permitted the County to be credited with dividends if the premiums paid by the County during the Policy year exceeded the charges for benefit claims and other expenses. Although the PSR was held by Connecticut General, the County could use the PSR to make up for any shortfalls that occurred between premium payments and benefit claims. Pursuant to the Policy, any funds remaining in the PSR after termination of the Policy and a final settlement of the County's account would be returned to the County. The Policy also provided that "[c]hanges may be made in the policy only by amendment signed by the Policyholder and by the Insurance Company acting through its President, Vice President, Secretary or Assistant Secretary. No agent may change or waive any terms of the policy." J.A. 118.[2]

In July 1995, Robert Behler, a Baltimore County employee, became the administrator for several of the County's insurance plans, including its group life insurance plan with Connecticut General. Behler testified that, sometime between 1995 and 1997, he agreed that Connecticut General could move a substantial sum of

---

[2]Citations to "J.A. __" refer to the Joint Appendix filed by the parties in this appeal.

5

money from the PSR into the IBNR.  Behler explained that Joe Mock, an employee of Connecticut General who served as Baltimore County's account manager, asked him to approve the movement of these funds for tax purposes.  Behler testified that Mock advised him that the transferred money would be treated as if it were still in the PSR.  Thus, Behler believed that the money moved from the PSR to the IBNR, like any funds remaining in the PSR, would be returned to Baltimore County at the termination of the Policy.  Unfortunately, this agreement on Connecticut General's movement of money from the PSR into the IBNR was never reduced to writing.

Mock testified in his deposition that he does not remember making any such representations to Behler.  Mock later explained that, for the Policy year ending August 31, 1995, Connecticut General began applying its own underwriting standards to calculate the amount of premiums paid that would go into the IBNR, instead of using those standards previously applied by Connecticut General's predecessor.  The financial statements indicate that during the 1993-1994 and the 1994-1995 Policy years, the IBNR increased from $150,000 to $409,000.  After this increase in the IBNR, the funds in the IBNR continued to accumulate interest.  Mock explained by deposition that the interest was used by Connecticut General to help offset the administrative expenses of managing Baltimore County's account.

After Mock was transferred to another position within Cigna Corporation, Art Johnson, another employee of Connecticut General, became Baltimore County's account manager. Behler testified that he explained and reiterated to Johnson his understanding with Mock concerning the money transferred by Connecticut General from the PSR to the IBNR. He stated that Johnson did not object to or correct this understanding in any way and thus acknowledged the arrangement. Johnson testified, however, that he did not recall any such conversation with Behler. While working with the County on the Policy, Johnson would also send financial reports to the County, indicating the sum of money in the IBNR and showing that those funds were accumulating interest. Behler explained that these documents reaffirmed his understanding that the funds in the IBNR would be returned to the County upon termination of the Policy because the IBNR was earning interest.

Baltimore County decided to terminate the Policy at the end of the 2001-2002 Policy year, with the Policy's final date being August 31, 2002. As part of its final account settlement, Connecticut General concluded that the total benefit claims were $2,999,539 for the final Policy year, with administrative costs and profits of $171,635. Thus, Baltimore County owed $3,171,174 to Connecticut General. The County had paid premiums of only $2,065,987 for the final Policy year, leaving a deficit of $1,105,187.

7

Connecticut General applied this deficit against the sum of $723,385 then in the PSR, which resulted in a final deficit of $381,802. Baltimore County never paid Connecticut General this deficit balance. Connecticut General's records also show that it paid $328,844 in unreported claims for the final Policy year, reducing the balance in the IBNR from $540,087 to $211,243. This $211,243 balance in the IBNR serves as the basis for Baltimore County's Complaint in this case, as the County contends that it is entitled to reimbursement of the IBNR funds from Connecticut General. To the contrary, Connecticut General asserts that it is entitled to keep the IBNR funds because it remains liable for any future unreported claims from the final Policy year.[3] Although this contingency exists, no claims have been reported since the filing of the Complaint in this case in January of 2005.

B.

On January 11, 2005, Baltimore County filed its Complaint in state court against defendants Cigna Corporation, Connecticut General, Art Johnson, and "Cigna Healthcare." Pursuant to the allegations of the Complaint, Baltimore County is a citizen of Maryland, Connecticut General is a citizen of Connecticut, Art

---

[3]Although Behler testified that his agreement with Mock and Johnson required the balance of the IBNR to be returned to Baltimore County after the final account settlement, the County offered to assume liability for any remaining unreported claims, if Connecticut General tendered to the County the balance of the IBNR.

8

Johnson is a citizen of Maryland, and Cigna Corporation is a citizen of Delaware and Pennsylvania. As Baltimore County later learned, Cigna Healthcare is a nonexistent entity. The Complaint, alleging that the County was entitled to the balance of the IBNR, contained three counts: fraud in the inducement, negligent misrepresentation, and breach of contract. It did not make specific allegations against any particular defendant, but instead made its allegations against the four Defendants collectively.

As relevant to this appeal, Baltimore County alleged, in the negligent misrepresentation count, that the "Defendants had a duty to Baltimore County that required the transmittal of accurate information to it. Defendants . . . consistently represented that the IBNR was Baltimore County's money." J.A. 26. The County also alleged that the Defendants were negligent in making such false statements and that the statements "were made with the intention of having Baltimore County act and rely" on them. Id. The County then alleged that the Defendants knew Baltimore County would rely on these false statements and that the County was justified in such reliance. Id. at 26-27.

On February 22, 2005, Connecticut General removed this matter to the District of Maryland, asserting the Complaint had fraudulently joined Johnson as a defendant and alleging that diversity jurisdiction was appropriate. Baltimore County filed its First Amended Complaint on February 28, 2005, before any responsive

pleading was filed. The First Amended Complaint contained the same allegations as the original Complaint but added Cigna HMA as a defendant and removed Cigna Healthcare. Cigna HMA is a registered health maintenance organization and a citizen of Maryland. On March 7, 2005, Baltimore County moved to remand to state court, maintaining that complete diversity did not exist because defendants Johnson and Cigna HMA are both citizens of Maryland.

On August 3, 2005, the district court issued its Memorandum and Order on the jurisdictional issue, denying Baltimore County's motion to remand and dismissing Johnson and Cigna HMA on the basis of fraudulent joinder. Opinion 5.[4] In evaluating whether fraudulent joinder had occurred, the court determined that the allegations against Johnson for fraud in the inducement and negligent misrepresentation "arguably do not satisfy Fed. R. Civ. P. 8(a), and clearly do not satisfy Fed. R. Civ. P. 9(b)." Id. at 3.[5] The court then concluded that Cigna HMA had also been fraudulently joined because Baltimore County had not presented

---

[4]The district court's Opinion of August 3, 2005, is found in the Joint Appendix at J.A. 222-26. In its Opinion, the court also denied the County's motion to file a Second Amended Complaint, which had been submitted to the court on May 3, 2005. The Second Amended Complaint contained more specific factual allegations against Johnson.

[5]With regard to the breach of contract claim of the First Amended Complaint, the court determined that "Johnson is not a party to the policy and therefore is not a proper defendant to the breach of contract claim." Opinion 3. Baltimore County does not address on appeal whether it had the possibility of maintaining a breach of contract claim against Johnson.

10

sufficient evidence to establish that Johnson was an employee of Cigna HMA.  Id. at 3-4.  Thus, the court determined that "[t]he County has shown no possibility of a claim against Johnson or Cigna Healthcare Mid-Atlantic, Inc."  Id. at 4.

On July 14, 2006, the court made its award of summary judgment to Connecticut General, the sole remaining defendant.[6]  The court concluded that Connecticut General's counterclaim, alleging that Baltimore County had failed to pay $381,802 in premiums for the final Policy year, constituted a valid recoupment defense.  J.A. 1068.  Because Connecticut General's damages claim exceeded the damages claimed by Baltimore County, the recoupment defense extinguished any monetary claim by Baltimore County.  Id. at 1080-81.  Connecticut General was thus awarded summary judgment.  Id. at 1081.

## II.

We review "de novo questions of subject matter jurisdiction, including those relating to the propriety of removal and fraudulent joinder."  Mayes v. Rapoport, 198 F.3d 457, 460 (4th Cir. 1999) (internal quotation marks omitted).

---

[6]After the district court denied Baltimore County's motion to remand and dismissed Johnson and Cigna HMA, the remaining defendants were Cigna Corporation and Connecticut General.  The court dismissed Cigna Corporation on October 18, 2005.

III.

On appeal, Baltimore County contends that the district court erred in its conclusion that it possessed diversity jurisdiction in this proceeding. In so concluding, the court determined that the non-diverse defendants — Johnson and Cigna HMA — had been fraudulently joined and dismissed both from the civil action. The County also contends that the court erred in denying its motion to file a Second Amended Complaint and in awarding summary judgment to the sole remaining defendant, Connecticut General. As explained below, the court erred in concluding that Johnson had been fraudulently joined. Thus, because there was no complete diversity among the parties, the district court did not possess jurisdiction in the matter. As a result, we need not reach the merits of the County's other contentions, but vacate those rulings for lack of jurisdiction. See Mayes v. Rapoport, 198 F.3d 457, 466 (4th Cir. 1999) (vacating, without addressing merits, district court's order dismissing complaint against diverse parties after concluding that court erred in its determination that non-diverse party was fraudulently joined).

A.

Before a case can be properly removed to federal court, a defendant must comply with the statutory requirements governing a defendant's ability to consummate removal. Mayes, 198 F.3d at 461. One such statutory mandate is that the party seeking removal must

12

show that there is "complete diversity" among all parties in order to establish diversity jurisdiction. See 28 U.S.C. § 1332(a). Complete diversity occurs "when no party shares common citizenship with any party on the other side." Mayes, 198 F.3d at 461. Because there must be complete diversity, it is "difficult for a defendant to remove a case if a non-diverse defendant has been party to the suit." Id. The doctrine of fraudulent joinder, however, "permits removal when a non-diverse party is (or has been) a defendant in the case." Id. In essence, the fraudulent joinder doctrine allows a court "to disregard, for jurisdictional purposes, the citizenship of certain non-diverse defendants, assume jurisdiction over a case, dismiss the non-diverse defendants, and thereby retain jurisdiction." Id.

A defendant seeking removal of a state court action to federal court bears the heavy burden of establishing that a non-diverse defendant has been fraudulently joined. See Mayes, 198 F.3d at 464. In order to establish the existence of fraudulent joinder,

> the removing party must establish either: that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleading of jurisdictional facts.

Id. (internal quotation marks and alterations omitted). In applying this strict standard, we have recognized that "[a] claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted." Marshall v. Manville Sales

13

Corp., 6 F.3d 229, 233 (4th Cir. 1993). In evaluating a claim of fraudulent joinder, all legal and factual issues must be resolved in favor of the plaintiff. Mayes, 198 F.3d at 464. A court making such an assessment "is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." Id. (internal quotation marks omitted). Furthermore, we have emphasized that the standard for evaluating a fraudulent joinder issue "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999).

In this appeal, Baltimore County contends that the court erred in dismissing the two non-diverse defendants — Johnson and Cigna HMA. The County asserts that Connecticut General did not satisfy its burden of establishing that the County had no possibility of maintaining either a negligent misrepresentation claim or a fraud in the inducement claim against the non-diverse defendants. We need only address, however, whether the County's claim of negligent misrepresentation has a chance of being maintained against Johnson. In order to survive an assertion of fraudulent joinder and show that complete diversity does not exist, the County needs only to show the possibility of maintaining one cause of action against one non-diverse defendant. See Mayes, 198 F.3d at 464. Because the County had the possibility of maintaining a negligent

14

misrepresentation claim against Johnson, we need not address whether it could have possibly established its other causes of action against Johnson or Cigna HMA.

B.

Baltimore County maintains on appeal that the district court erred in its conclusion that Johnson was fraudulently joined. The County asserts that Connecticut General did not meet its burden of establishing that the County had no possibility of maintaining a negligent misrepresentation claim against Johnson. Connecticut General contends, on the other hand, that a negligent misrepresentation claim could not be maintained because (1) the County did not meet the pleading requirements of Federal Rule of Civil Procedure 9(b), and (2) there is no factual basis on which to conclude that Johnson is liable for any negligent misrepresentation. We assess these contentions in turn.

1.

Connecticut General first contends that the district court correctly applied Fed R. Civ. P. 9(b) to Baltimore County's negligent misrepresentation claim against Johnson. Specifically, the court concluded in its Opinion that the allegations against Johnson, including the negligent misrepresentation claim, "arguably do not satisfy Fed. R. Civ. P. 8(a), and clearly do not satisfy Fed. R. Civ. P. 9(b)." Opinion 3. Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting

15

fraud or mistake shall be stated with particularity." Connecticut General maintains that the First Amended Complaint was not pled with particularity because it does not contain any factual or legal allegations specifically directed at Johnson. Instead, the First Amended Complaint makes all allegations against the named defendants collectively. It also fails to allege when these statements were made, to whom they were made, and what was specifically represented.

The County, however, contends that the pleading requirements of Rule 9(b) do not apply to a negligent misrepresentation claim. To maintain such a claim under Maryland law, a plaintiff must show:

    (1)   the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;

    (2)   the defendant intends that his statement will be acted upon by the plaintiff;

    (3)   the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;

    (4)   the plaintiff, justifiably, takes action in reliance on the statement; and

    (5)   the plaintiff suffers damage proximately caused by the defendant's negligence.

Griesi v. Atl. Gen. Hosp. Corp., 756 A.2d 548, 553 (Md. 2000). In evaluating whether a cause of action must be pled with particularity, a court should examine whether the claim requires an essential showing of fraud. See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1104-05 (9th Cir. 2003) ("Allegations of non-fraudulent

16

conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)."); In re NationsSmart Corp. Sec. Litig., 130 F.3d 309, 315 (8th Cir. 1997) ("[A] pleading standard which requires a party to plead particular facts to support a cause of action that does not include fraud or mistake as an element comports neither with Supreme Court precedent nor with the liberal system of 'notice pleading' embodied in the Federal Rules of Civil Procedure."). Importantly, a claim of negligent misrepresentation under Maryland law does not contain an essential showing of fraud and thus the heightened pleading requirements of Rule 9(b) do not apply. See Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP, 475 F.3d 824, 833 (7th Cir. 2007) (recognizing that heightened pleading standards of Rule 9(b) do not apply to negligent misrepresentation claim); Gen. Elec. Capital Corp. v. Posey, 415 F.3d 391, 395-96 (5th Cir. 2005) (concluding that negligent representation claim needs only to satisfy notice pleading standard of Rule 8(a)).

Connecticut General next contends that, even if the negligent misrepresentation claim does not require an essential showing of fraud, Rule 9(b) standards should nevertheless apply because the County made allegations of both fraudulent and non-fraudulent conduct in its First Amended Complaint. We also reject this contention and conclude, as have our sister circuits, that in such circumstances only the fraud allegations of a complaint must satisfy the heightened pleading standards of Rule 9(b). See Vess,

17

317 F.3d at 1104-05; <u>In re NationsSmart Corp.</u>, 130 F.3d at 315.  As explained by the Ninth Circuit,

> [t]o require that non-fraud allegations be stated with particularity merely because they appear in a complaint alongside fraud averments, however, serves no similar reputation-preserving function, and would impose a burden on plaintiffs not contemplated by the notice pleading requirements of Rule 8(a).

<u>Vess</u>, 317 F.3d at 1104.  Thus, because the heightened pleading standards of Rule 9(b) do not apply to the County's negligent misrepresentation claim against Johnson, the district court erred in determining that there was a fraudulent joinder of Johnson on this ground.

2.

Connecticut General contends, in the alternative, that even if Baltimore County's First Amended Complaint was properly pled, the County still has no possibility, as a matter of law, of maintaining a negligent misrepresentation claim against Johnson.  It asserts that, under Maryland law, it would be impossible for the County to establish at least two of the essential elements needed to prove a negligent misrepresentation claim.  First, Connecticut General asserts that the County has no possibility of demonstrating that Johnson owes the County a duty of care in communicating information.  Second, Connecticut General asserts that the County has no possibility of showing that it was reasonable for it to rely on Johnson's silent acknowledgment of, or acquiescence in, Behler's earlier arrangement with Mock concerning the IBNR.

18

Connecticut General first asserts, in its alternative contention, that it would be impossible for Baltimore County to establish that Johnson owed it a tort duty because the County cannot, as a matter of law, show that any special relationship existed between the County and Johnson. In order to initiate and pursue a negligent misrepresentation claim, a plaintiff must establish that the defendant owes it a duty of care to communicate correct information. See Griesi, 756 A.2d at 553. Although there is no precise formula for determining whether a duty of care exists between two parties, the Maryland courts have, at minimum, evaluated "the nature of the legal relationship between the parties and the likely harm that results from a party's failure to exercise reasonable care within that relationship." Id. at 554. When dealing with claims of economic loss due to negligent misrepresentation, a plaintiff is entitled to demonstrate that a duty of care exists by establishing an intimate nexus or special relationship between the parties. Id.; see also Giant Food, Inc. v. Ice King, Inc., 536 A.2d 1182, 1185 (Md. Ct. Spec. App. 1988) ("[T]he most common example of the duty to speak with reasonable care is based on a business or professional relationship, or one in which there is a pecuniary interest."). The Maryland courts have found special relationships to exist between parties in a variety of business relationships. See, e.g., Griesi, 756 A.2d at 556 (concluding that special relationship existed in pre-contractual

19

employment negotiations); <u>Weisman v. Connors</u>, 540 A.2d 783, 793-94 (Md. 1998) (concluding that there was sufficient evidence for jury to find special relationship between two executives engaged in pre-contractual employment negotiations); <u>Giant Food</u>, 536 A.2d at 1185 (concluding that special relationship existed between buyer and seller because of extensive communications that occurred over period of time).

Viewed in the proper light, it is clear that the County has the possibility of establishing that it had a special relationship with Johnson. First, the Maryland courts have not ruled out, or even addressed, whether a special relationship could exist under the circumstances of this case. <u>See</u> <u>Hartley</u>, 187 F.3d at 424-25 (reasoning that fraudulent joinder did not exist when state court had not squarely foreclosed plaintiff's claim). Second, going beyond the allegations of the pleadings, Baltimore County has presented evidence that Johnson had a close business relationship with the County, during which he engaged in detailed and extensive communications with the County concerning the Policy and the two reserve funds. This evidence, given Maryland's legal precedent, provides the County with the possibility of establishing that a special relationship existed between it and Johnson.

Second, Connecticut General contends that Baltimore County cannot establish that it was reasonable for it to rely on any representations that may have been made or acknowledged by Johnson.

See <u>Griesi</u>, 756 A.2d at 553 (recognizing that, in order to establish negligent misrepresentation claim, plaintiff must demonstrate that it was justified in relying on defendant's representations). Connecticut General first asserts that it was unreasonable, as a matter of law, for the County to rely on any representations made by Johnson when the Policy specifically provides that its terms cannot be modified by an agent. Because the Policy does not apply to the IBNR, however, this contention must fail. That the Policy could not have been modified by a Connecticut General agent does not necessarily mean that the IBNR, which was neither created by nor subject to any written agreement, could not have been so modified.

Connecticut General also asserts that it was unreasonable for the County to rely on Johnson's silent acknowledgment of, or acquiescence in, Behler's arrangement with Mock. It contends that Johnson was required under law to have made a more definitive statement in order for the County to have reasonably relied on any information Johnson provided. The Maryland courts, however, have recognized that a successful negligent misrepresentation claim may be based upon a defendant failing "to make statements needed to clarify the plaintiff's understanding." <u>Griesi</u>, 756 A.2d at 555. This legal principle is controlling here, and the County has presented evidence that Johnson should have corrected Behler after Behler explained his understanding of the IBNR. Thus, because

21

Baltimore County has a possibility of maintaining a cause of action for negligent misrepresentation against Johnson, the County's motion to remand this proceeding to state court should have been granted.

IV.

Pursuant to the foregoing, we vacate the district court's judgment order, reverse its holding that it possessed jurisdiction, and remand to permit a further remand of this case to the appropriate state court.

VACATED IN PART, REVERSED
IN PART, AND REMANDED

WILKINSON, Circuit Judge, dissenting:

The only fault the majority finds with the district court is its holding that Art Johnson was fraudulently joined in this action. In the majority's view, the district court should have remanded the case to state court because Baltimore County's negligent misrepresentation claim "has a chance of being maintained against Johnson." See ante at 14. Because I believe the district court correct in finding Johnson improperly joined, I respectfully dissent.

I.

The gravamen of the County's complaint is its allegation that Joe Mock, a Connecticut General Sales Agent and citizen of Texas, promised that the County would be entitled to the IBNR funds upon policy termination. But Baltimore County did not sue Joe Mock. Instead, it chose to hale a citizen of Maryland, Art Johnson, into state court alleging negligent misrepresentation. The problem is that nowhere in its complaint or subsequent submissions does Baltimore County identify a single false statement made by Art Johnson. Indeed, Johnson did not even take over the Baltimore County account until 1999 -- well after the alleged misrepresentations were made by Joe Mock. Nor does the County explain why Johnson owed it -- an equally sophisticated business entity -- a duty to explain contract terms, or why the County's

23

purported reliance upon an agent's representation was reasonable in light of Policy terms expressly foreclosing agent-modifications. For all of these reasons, the district court was correct to conclude that nondiverse defendant Johnson had been fraudulently joined. The district court's decision is also correct in that the County's Second Amended Complaint plainly fails to allege negligent misrepresentation as to Johnson with the requisite Rule 9(b) particularity.

## II.

To arrive at the conclusion that Johnson was not fraudulently joined, the majority first holds that negligent misrepresentation claims need not comport with the particularity requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b) is an exception to the general requirements of notice pleading, which provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Thus, in a case governed by Rule 9(b), the plaintiff must allege the speaker, time, place, and contents of the allegedly false statement. United States v. ex rel. Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999). Where, as here, there are multiple defendants, a plaintiff must state "all claims with particularity as to each of the defendants" and "identif[y] each individual defendant's participation." Adams

24

v. NVR Homes, Inc., 193 F.R.D. 243, 250, 251 (D. Md. 2000) (emphasis added).

Neither the majority nor Baltimore County argues that the County's claim of negligent misrepresentation against Art Johnson in its First Amended Complaint meets Rule 9(b)'s requirements. And for good reason. The complaint attributes no misrepresentation to Johnson at all, much less specify when these statements were made, to whom they were made, or what was misrepresented. Indeed, Johnson's name appears only twice in the First Amended Complaint: once in the caption and once in paragraph five where it is alleged that he is a Maryland citizen. In light of these deficiencies, I would affirm the district court's ruling that the County's negligent misrepresentation allegations against Johnson "clearly do not satisfy Fed. R. Civ. P. 9(b)."

The majority, however, sidesteps this analysis: It summarily concludes that the County's claim against Johnson is not governed by Rule 9(b) and is thus properly pled. The majority reasons that "a claim of negligent misrepresentation under Maryland law does not contain an essential showing of fraud." See ante at 17. But a cause of action need not prohibit "fraud" in so many words for the requirements of Rule 9(b) to apply. Rather, Rule 9(b) is applicable to "all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically

25

termed fraud." Toner v. Allstate Ins. Co., 821 F. Supp. 276, 283 (D. Del. 1993).

Here, fraud and negligent misrepresentation share two essential elements: both require that defendant supply false information to plaintiff and that plaintiff detrimentally rely on the false statement. See Breeden v. Richmond Cmty. Coll., 171 F.R.D. 189, 202 (M.D.N.C. 1997). The fact that negligent misrepresentation may be premised on a "negligent" false statement is not dispositive: Rule 9(b) is not delimited by an intentionality requirement. Rather, the plain text extends beyond intentional misrepresentations: Rule 9(b) covers "fraud and mistake." Fed. R. Civ. P. 9(b). As such, "the rule was designed to govern claims premised upon a party's misrepresentation, misapprehension, or misunderstanding . . . whether intentionally or carelessly generated." Breeden, 171 F.R.D. at 199.

Indeed, the rationale behind Rule 9(b)'s particularity requirements applies with equal force to claims of negligent misrepresentation. Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp., 351 F. Supp. 2d 436, 447 (M.D.N.C. 2005). As this court has explained, Rule 9(b) protects defendants "from harm to their goodwill and reputation," and from "frivolous suits." Harrison, 352 F.3d at 921 (quotation omitted). Like fraud, negligent misrepresentation claims bear on the morality of defendant's conduct and his reputation going forward. A defendant is therefore

26

"entitled to know fully the grounds on which the allegations are made, so that he may have every opportunity to prepare his case to clear himself at the trial." Breeden, 171 F.R.D. at 200 (quotation omitted).

In light of the similarities between fraud and its close cousin negligent misrepresentation, it is hardly surprising that a number of our sister circuits espouse the view that Rule 9(b) does indeed apply to claims of negligent misrepresentation. For example, in Aetna Cas. & Sur. Co. v. Aniero Concrete Co., the Second Circuit held that negligent misrepresentation "must be pled in accordance with the specificity criteria of Rule 9(b)." 404 F.3d 566, 583 (2d Cir. 2005) (per curiam). In that case, plaintiff's complaint was dismissed because it "failed to allege with specificity any representation made to [plaintiff] by [defendant]." Id. at 583-84; see also Atlantic Richfield Co. v. Ramirez, 176 F.3d 481, 1999 WL 273241 (9th Cir. 1999) (unpublished) ("The district court . . . properly dismissed [plaintiff's] first and second counterclaims, for fraud and negligent misrepresentation, because they did not comply with Federal Rule of Civil Procedure 9(b)'s particularity requirement."); see also Benchmark Elecs., Inc. v. J.M. Huber Corp., 343 F.3d 719, 723 (5th Cir. 2003) (holding that Rule 9(b) applies to claims of negligent misrepresentations where, as here, "fraud and negligent

27

misrepresentation claims are based on the same set of alleged facts").

A number of district courts -- some applying the very Maryland tort at issue in this case -- have also concluded that Rule 9(b) applies to negligent misrepresentation claims. See, e.g., Madison River, 351 F. Supp. 2d at 447 (requiring negligent misrepresentation claim to meet heightened pleading requirements of Rule 9(b)); Dealers Supply Co. v. Chiel Indus., 348 F. Supp. 2d 579, 590 (M.D.N.C. 2004); Giannaris v. Cheng, 219 F. Supp. 2d 687, 694-95 (D. Md. 2002)(requiring negligent misrepresentation claim under Maryland law to meet heightened pleading requirements of Rule 9(b)); Swedish Civil Aviation Admin. v. Project Mgmt. Enter., Inc., 190 F. Supp. 2d 785, 798-99 (D. Md. 2002) (same); Adams, 193 F.R.D. at 252 (same); Breeden, 171 F.R.D. at 199-202 (requiring negligent misrepresentation claim to meet heightened pleading requirements of Rule 9(b)); In re Leslie Fay Cos., Inc. Securities Litig., 918 F. Supp. 749, 767 (S.D.N.Y. 1996) (same); Pitten v. Jacobs, 903 F. Supp. 937, 951 (D.S.C. 1995) (same); Lubin v. Sybedon Corp., 688 F. Supp. 1425, 1453-54 (S.D. Cal. 1988) (same).

In view of all this, the two references to Mr. Johnson in the First Amended Complaint -- and the absence of anything remotely resembling particularized pleading -- establish that Mr. Johnson has no business being in this case.

Even if Baltimore County's First Amended Complaint was properly pled, the district court correctly held that Johnson was fraudulently joined, because the County cannot maintain a claim for negligent misrepresentation against nondiverse defendant Johnson.

A.

To begin with, Baltimore County failed to identify any qualifying misrepresentation made by Johnson. Under Maryland law, negligent misrepresentation is concerned primarily with false statements. Indeed, the word "statement" occurs no less than four times in the definition of the operative tort employed by my friends in the majority. See ante at 16. To recover, the County must prove that Art Johnson (1) negligently "assert[ed] a false statement"; (2) intended "that his statement" would be acted upon; (3) knew that the County would "probably rely on the statement"; and (4) that the County did in fact "rel[y] on the statement." Id. (emphasis added).

It is undisputed that Art Johnson never made a "false statement" to Baltimore County: nowhere within its Amended Complaint or its subsequent submissions does the County identify any statement made by Johnson. Indeed, the only statements that Baltimore County has ever identified are ones it attributes to Joe Mock, a citizen of Texas. And even these statements were allegedly

29

made in the mid-1990s -- years before Johnson began working for Connecticut General.

The majority contends that the County's failure to identify a statement made by Johnson is not dispositive: Silence is enough. See ante at 21 (concluding that Johnson may be held liable for his "fail[ure] to make statements needed to clarify [Baltimore County's] understanding").[*] But to impose in tort an obligation to refrain from negligent silence goes further than anything the Maryland courts have sanctioned. Such an approach expands tort law beyond even deliberate silence -- it punishes those who remain carelessly mute.

B.

The district court's conclusion that Johnson was fraudulently joined is correct for the additional reason that Johnson owed no duty to Baltimore County. To be actionable, a plaintiff alleging negligent misrepresentation must "establish that the defendant owes it a duty of care to communicate correct information." See ante at 19 (quoting Griesi v. Atl. Gen. Hosp. Corp., 756 A.2d 548, 553 (Md.

---

[*]I realize that a claim for fraudulent (as opposed to negligent) disclosure may be perpetrated by omission when a "special duty to disclose exists." Hogan v. Md. State Dental Ass'n, 843 A.2d 902, 908 (Ct. Spec. App. Md. 2004). But Johnson owed no duty to Baltimore County. See infra Part III.B. Further, the case law quoted by the majority for its assertion that liability can be predicated on negligent silence is extracted from a discussion of duty, not a discussion of what constitutes a "statement." See Griesi v. Atl. Gen. Hosp. Corp., 756 A.2d 548, 555 (Md. 2000).

2000). Under Maryland law, the relationship between "an insurance carrier and its insured . . . does not warrant the imposition of tort duties." Stephens v. Liberty Mut. Fire Ins. Co., 821 F. Supp. 1119, 1121 (D. Md. 1993). "The purpose of this rule is to confine actions between an insured and his or her insurer to the realm of contract law, rather than letting such actions expand to tort proportions." McCauley v. Suls, 716 A.2d 1129, 1134 (Md. Ct. Spec. App. 1998) (quotation omitted); see also Johnson v. Fed. Kemper Ins. Co., 536 A.2d 1211, 1213 (Md. Ct. Spec. App. 1988).

The majority nonetheless maintains that a tort duty may exist here because Baltimore County and Johnson "had a close business relationship with the County." See ante at 20. But the existence of a "close business relationship" has never been enough: "the ordinary commercial adversary bargainer ordinarily has no duty to use care in supplying information to those with whom he bargains." Dan B. Dobbs, The Law of Torts § 472, at 1350 (2001). It is instead the "nature of [the] legal relationship" which determines whether the requisite special relationship exists. Griesi, 756 A.2d at 554 (emphasis added).

The cases the majority relies upon to support a duty here are not on point: each involves employment or consumer negotiations where "vital and material information" was within the "exclusive control" of the defendant. Id. at 556 (pre-contractual employment negotiations); Weisman v. Connors, 540 A.2d 783, 793-94 (Md. 1988)

31

(same); <u>Giant Food, Inc. v. Ice King, Inc.</u>, 536 A.2d 1182, 1185-86 (Md. Ct. Spec. App. 1988) (extensive and detailed consumer negotiations). Baltimore County is not a vulnerable consumer or prospective employee. It has a wealth of prior experience with insurance matters; has been a party to this Policy or its predecessor for more than 35 years; and is itself an insurer. Unlike the prospective employees or would-be purchasers in the cases cited by the majority, all the County had to do to understand its rights was read the contract. <u>Holzman v. Fiola Blum, Inc.</u>, 726 A.2d 818, 831 (Md. Ct. Spec. App. 1999) (A party "is under a duty to learn the contents of a contract before signing it" and "presumed to know the contents").

C.

The district court's conclusion that Johnson was fraudulently joined should also be upheld because Baltimore County cannot establish reasonable reliance. <u>See</u> <u>ante</u> at 16 (quoting <u>Griesi</u>, 756 A.2d at 553). Where, as here, a policy provides that no agent has the authority to amend the agreement or bind the company by a promise or representation, reliance upon an agent representation which purports to modify the policy is unreasonable as a matter of law. <u>See, e.g.</u>, <u>Cannon v. Southland Life Ins. Co.</u>, 283 A.2d 404, 407-08 (Md. 1971); <u>Simpson v. Prudential Ins. Co.</u>, 177 A.2d 417, 421 (Md. 1962).

In the case at hand, the Baltimore County/Connecticut General Policy prohibits agent-modification. It provides:

> POLICY CHANGES. Changes may be made in the policy only by amendment <u>signed by</u> the Policyholder and by the Insurance Company acting through its President, Vice President, Secretary or Assistant Secretary. <u>No agent may change or waive any terms of the policy</u>.

J.A. 118 (emphasis added). The policy plainly put Baltimore County on notice that (1) any policy change must be in writing and signed by a Connecticut General officer; and (2) neither Joe Mock, Art Johnson, nor any other agent had any authority whatsoever to amend the Baltimore County/Connecticut General Policy.

Nevertheless, the majority brushes aside as irrelevant the no-modification clause: according to my colleagues, the provision is inapposite "[b]ecause the policy does not apply to the IBNR." <u>See ante</u> at 21. The majority apparently views the IBNR agreement as a different contract. Yet, since almost any modification can be construed as a new contract, the majority's conclusion that the IBNR account is a brand-new agreement reads the no-modification clause right out of the Policy. And, even if the IBNR account could be considered a separate pact, the majority's suggestion only underscores the unreasonableness of the County's alleged reliance. Neither Joe Mock nor Art Johnson had any authority whatsoever to amend the Baltimore County/Connecticut General Policy, much less enter into a new contract. In short, Baltimore County had no more reason to believe Joe Mock could orally bind Connecticut General to

33

a new insurance agreement than it had reason to believe he could orally amend the existing one.

IV.

Whatever one's view of the scope of fraudulent joinder, the doctrine exists for a purpose: to afford fair treatment to out-of-state defendants sued by in-state residents. It is obvious to me, as it was to the district court, that Baltimore County is seeking to have its claim heard in a forum which it believes will favor its position vis-a-vis an out-of-state insurance company. While I have total confidence in the ability of state courts to administer justice impartially, a defendant's right to remove a case that could be heard in federal court should not be so easily overcome by litigation tactics. See McKinney v. Bd. of Trs. of Mayland Cmty. Coll., 955 F.2d 924, 927-28 (4th Cir. 1992).

The cost of permitting this sort of jurisdictional gamesmanship extends beyond the mere defeat of what Congress deems the legitimate purposes of diversity jurisdiction. Fraudulent joinders exact a high toll on individuals who do not rightly belong in a lawsuit: as a result, lives are disrupted by expensive and unnecessary litigation. In my view, human beings are not sacrificial pawns on the board of a party's litigation strategy. I would affirm the judgment of the district courts in all respects.