WILKINSON, Circuit Judge,
dissenting:
The only fault the majority finds with the district court is its holding that Art Johnson was fraudulently joined in this action. In the majority’s view, the district court should have remanded the case to *924 state court because Baltimore County’s negligent misrepresentation claim “has a chance of being maintained against Johnson.” See ante at 920. Because I believe the district court correct in finding Johnson improperly joined, I respectfully dissent.
I.
The gravamen of the County’s complaint is its allegation that Joe Mock, a Connecticut General Sales Agent and citizen of Texas, promised that the County would be entitled to the IBNR funds upon policy termination. But Baltimore County did not sue Joe Mock. Instead, it chose to hale a citizen of Maryland, Art Johnson, into state court alleging negligent misrepresentation. The problem is that nowhere in its complaint or subsequent submissions does Baltimore County identify a single false statement made by Art Johnson. Indeed, Johnson did not even take over the Baltimore County account until 1999 — well after the alleged misrepresentations were made by Joe Mock. Nor does the County explain why Johnson owed it — an equally sophisticated business entity — a duty to explain contract terms, or why the County’s purported reliance upon an agent’s representation was reasonable in light of Policy terms expressly foreclosing agent-modifications. For all of these reasons, the district court was correct to conclude that nondiverse defendant Johnson had been fraudulently joined. The district court’s decision is also correct in that the County’s Second Amended Complaint plainly fails to allege negligent misrepresentation as to Johnson with the requisite Rule 9(b) particularity.
II.
To arrive at the conclusion that Johnson was not fraudulently joined, the majority first holds that negligent misrepresentation claims need not comport with the particularity requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b) is an exception to the general requirements of notice pleading, which provides that “[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.” Fed.R.Civ.P. 9(b). Thus, in a case governed by Rule 9(b), the plaintiff must allege the speaker, time, place, and contents of the allegedly false statement. United States ex rel. Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir.1999). Where, as here, there are multiple defendants, a plaintiff must state “all claims with particularity as to each of the defendants” and “identify] each individual defendant’s participation.” Adams v. NVR Homes, Inc., 193 F.R.D. 243, 250, 251 (D.Md.2000) (emphasis added).
Neither the majority nor Baltimore County argues that the County’s claim of negligent misrepresentation against Art Johnson in its First Amended Complaint meets Rule 9(b)’s requirements. And for good reason. The complaint attributes no misrepresentation to Johnson at all, much less specify when these statements were made, to whom they were made, or what was misrepresented. Indeed, Johnson’s name appears only twice in the First Amended Complaint: once in the caption and once in paragraph five where it is alleged that he is a Maryland citizen. In light of these deficiencies, I would affirm the district court’s ruling that the County’s negligent misrepresentation allegations against Johnson “clearly do not satisfy Fed.R.Civ.P. 9(b).”
The majority, however, sidesteps this analysis: It summarily concludes that the County’s claim against Johnson is not governed by Rule 9(b) and is thus properly pled. The majority reasons that “a claim of negligent misrepresentation under Maryland law does not contain an essential showing of fraud.” See ante at 921. But a *925 cause of action need not prohibit “fraud” in so many words for the requirements of Rule 9(b) to apply. Rather, Rule 9(b) is applicable to “all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud.” Toner v. Allstate Ins. Co., 821 F.Supp. 276, 283 (D.Del.1993).
Here, fraud and negligent misrepresentation share two essential elements: both require that defendant supply false information to plaintiff and that plaintiff detrimentally rely on the false statement. See Breeden v. Richmond Cmty. Coll., 171 F.R.D. 189, 202 (M.D.N.C.1997). The fact that negligent misrepresentation may be premised on a “negligent” false statement is not dispositive: Rule 9(b) is not delimited by an intentionality requirement. Rather, the plain text extends beyond intentional misrepresentations: Rule 9(b) covers “fraud and mistake.” Fed.R.Civ.P. 9(b). As such, “the rule was designed to govern claims premised upon a party’s misrepresentation, misapprehension, or misunderstanding ... whether intentionally or carelessly generated.” Breeden, 171 F.R.D. at 199.
Indeed, the rationale behind Rule 9(b)’s particularity requirements applies with equal force to claims of negligent misrepresentation. Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp., 351 F.Supp.2d 436, 447 (M.D.N.C.2005). As this court has explained, Rule 9(b) protects defendants “from harm to their goodwill and reputation,” and from “frivolous suits.” Harrison, 352 F.3d at 921 (quotation omitted). Like fraud, negligent misrepresentation claims bear on the morality of defendant’s conduct and his reputation going forward. A defendant is therefore “entitled to know fully the grounds on which the allegations are made, so that he may have every opportunity to prepare his case to clear himself at the trial.” Breeden, 171 F.R.D. at 200 (quotation omitted).
In light of the similarities between fraud and its close cousin negligent misrepresentation, it is hardly surprising that a number of our sister circuits espouse the view that Rule 9(b) does indeed apply to claims of negligent misrepresentation. For example, in Aetna Cas. & Sur. Co. v. Aniero Concrete Co., the Second Circuit held that negligent misrepresentation “must be pled in accordance with the specificity criteria of Rule 9(b).” 404 F.3d 566, 583 (2d Cir.2005) (per curiam). In that case, plaintiffs complaint was dismissed because it “failed to allege with specificity any representation made to [plaintiff] by [defendant].” Id. at 583-84; see also Atlantic Richfield Co. v. Ramirez, 176 F.3d 481, 1999 WL 273241 (9th Cir.1999) (unpublished) (“The district court ... properly dismissed [plaintiffs] first and second counterclaims, for fraud and negligent misrepresentation, because they did not comply with Federal Rule of Civil Procedure 9(b)’s particularity requirement.”); see also Benchmark Elecs., Inc. v. J.M. Huber Corp., 343 F.3d 719, 723 (5th Cir.2003) (holding that Rule 9(b) applies to claims of negligent misrepresentations where, as here, “fraud and negligent misrepresentation claims are based on the same set of alleged facts”).
A number of district courts — some applying the very Maryland tort at issue in this case — have also concluded that Rule 9(b) applies to negligent misrepresentation claims. See, e.g., Madison River, 351 F.Supp.2d at 447 (requiring negligent misrepresentation claim to meet heightened pleading requirements of Rule 9(b)); Dealers Supply Co. v. Cheil Indus., 348 F.Supp.2d 579, 590 (M.D.N.C.2004); Giannaris v. Cheng, 219 F.Supp.2d 687, 694-95 (D.Md.2002)(requiring negligent misrepresentation claim under Maryland law to meet heightened pleading requirements of Rule 9(b)); Swedish Civil Aviation Admin. v. Project Mgmt. Enter., Inc., 190 F.Supp.2d 785, 798-99 (D.Md.2002) (same); *926 Adams, 193 F.R.D. at 252 (same); Breeden, 171 F.R.D. at 199-202 (requiring negligent misrepresentation claim to meet heightened pleading requirements of Rule 9(b)); In re Leslie Fay Cos., Inc. Securities Litig., 918 F.Supp. 749, 767 (S.D.N.Y.1996) (same); Pitten v. Jacobs, 903 F.Supp. 937, 951 (D.S.C.1995) (same); Lubin v. Sybedon Corp., 688 F.Supp. 1425, 1453-54 (S.D.Cal.1988) (same).
In view of all this, the two references to Mr. Johnson in the First Amended Complaint — and the absence of anything remotely resembling particularized pleading — establish that Mr. Johnson has no business being in this case.
III.
Even if Baltimore County’s First Amended Complaint was properly pled, the district court correctly held that Johnson was fraudulently joined, because the County cannot maintain a claim for negligent misrepresentation against nondiverse defendant Johnson.
A.
To begin with, Baltimore County failed to identify any qualifying misrepresentation made by Johnson. Under Maryland law, negligent misrepresentation is concerned primarily with false statements. Indeed, the word “statement” occurs no less than four times in the definition of the operative tort employed by my friends in the majority. See ante at 921. To recover, the County must prove that Art Johnson (1) negligently “assertfed] a false statement ”; (2) intended “that his statement ” would be acted upon; (3) knew that the County would “probably rely on the statement ”; and (4) that the County did in fact “reify] on the statement.” Id. (emphasis added).
It is undisputed that Art Johnson never made a “false statement” to Baltimore County: nowhere within its Amended Complaint or its subsequent submissions does the County identify any statement made by Johnson. Indeed, the only statements that Baltimore County has ever identified are ones it attributes to Joe Mock, a citizen of Texas. And even these statements were allegedly made in the mid-1990s — years before Johnson began working for Connecticut General.
The majority contends that the County’s failure to identify a statement made by Johnson is not dispositive: Silence is enough. See ante at 923 (concluding that Johnson may be held liable for his “failfure] to make statements needed to clarify [Baltimore County’s] understanding”).[7] But to impose in tort an obligation to refrain from negligent silence goes further than anything the Maryland courts have sanctioned. Such an approach expands tort law beyond even deliberate silence — it punishes those who remain carelessly mute.
B.
The district court’s conclusion that Johnson was fraudulently joined is correct for the additional reason that Johnson owed no duty to Baltimore County. To be actionable, a plaintiff alleging negligent misrepresentation must “establish that the defendant owes it a duty of care to communicate correct information.” See ante *927 at 922 (quoting Griesi v. Atl. Gen. Hosp. Corp., 360 Md. 1, 756 A.2d 548, 553 (2000)). Under Maryland law, the relationship between “an insurance carrier and its insured ... does not warrant the imposition of tort duties.” Stephens v. Liberty Mut. Fire Ins. Co., 821 F.Supp. 1119, 1121 (D.Md.1993). “The purpose of this rule is to confine actions between an insured and his or her insurer to the realm of contract law, rather than letting such actions expand to tort proportions.” McCauley v. Suls, 123 Md.App. 179, 716 A.2d 1129, 1134 (Md.Ct.Spec.App.1998) (quotation omitted); see also Johnson v. Fed. Kemper Ins. Co., 74 Md.App. 243, 536 A.2d 1211, 1213 (Md.Ct.Spec.App.1988).
The majority nonetheless maintains that a tort duty may exist here because Baltimore County and Johnson “had a close business relationship with the County.” See ante at 923. But the existence of a “close business relationship” has never been enough: “the ordinary commercial adversary bargainer ordinarily has no duty to use care in supplying information to those with whom he bargains.” Dan B. Dobbs, The Law of Torts § 472, at 1350 (2001). It is instead the “nature of [the] legal relationship” which determines whether the requisite special relationship exists. Griesi 756 A.2d at 554 (emphasis added).
The cases the majority relies upon to support a duty here are not on point: each involves employment or consumer negotiations where “vital and material information” was within the “exclusive control” of the defendant. Id. at 556 (pre-contractual employment negotiations); Weisman v. Connors, 312 Md. 428, 540 A.2d 783, 793-94 (1988) (same); Giant Food, Inc. v. Ice King, Inc., 74 Md.App. 183, 536 A.2d 1182, 1185-86 (Md.Ct.Spec.App.1988) (extensive and detailed consumer negotiations). Baltimore County is not a vulnerable consumer or prospective employee. It has a wealth of prior experience with insurance matters; has been a party to this Policy or its predecessor for more than 35 years; and is itself an insurer. Unlike the prospective employees or would-be purchasers in the cases cited by the majority, all the County had to do to understand its rights was read the contract. Holzman v. Fiola Blum, Inc., 125 Md.App. 602, 726 A.2d 818, 831 (Md.Ct.Spec.App.1999) (A party “is under a duty to learn the contents of a contract before signing it” and “presumed to know the contents”).
C.
The district court’s conclusion that Johnson was fraudulently joined should also be upheld because Baltimore County cannot establish reasonable reliance. See ante at 921 (quoting Griesi 756 A.2d at 553). Where, as here, a policy provides that no agent has the authority to amend the agreement or bind the company by a promise or representation, reliance upon an agent representation which purports to modify the policy is unreasonable as a matter of law. See, e.g., Cannon v. Southland Life Ins. Co., 263 Md. 463, 283 A.2d 404, 407-08 (1971); Simpson v. Prudential Ins. Co., 227 Md. 393, 177 A.2d 417, 421 (1962).
In the case at hand, the Baltimore County/Connecticut General Policy prohibits agent-modification. It provides:
POLICY CHANGES. Changes may be made in the policy only by amendment signed by the Policyholder and by the Insurance Company acting through its President, Vice President, Secretary or Assistant Secretary. No agent may change or waive any terms of the policy.
J.A. 118 (emphasis added). The policy plainly put Baltimore County on notice that (1) any policy change must be in writing and signed by a Connecticut General officer; and (2) neither Joe Mock, Art *928 Johnson, nor any other agent had any authority whatsoever to amend the Baltimore County/Connecticut General Policy.
Nevertheless, the majority brushes aside as irrelevant the no-modification clause: according to my colleagues, the provision is inapposite “[bjecause the policy does not apply to the IBNR.” See ante at 923. The majority apparently views the IBNR agreement as a different contract. Yet, since almost any modification can be construed as a new contract, the majority’s conclusion that the IBNR account is a brand-new agreement reads the no-modification clause right out of the Policy. And, even if the IBNR account could be considered a separate pact, the majority’s suggestion only underscores the unreasonableness of the County’s alleged reliance. Neither Joe Mock nor Art Johnson had any authority whatsoever to amend the Baltimore County/Connecticut General Policy, much less enter into a new contract. In short, Baltimore County had no more reason to believe Joe Mock could orally bind Connecticut General to a new insurance agreement than it had reason to believe he could orally amend the existing one.
IV.
Whatever one’s view of the scope of fraudulent joinder, the doctrine exists for a purpose: to afford fair treatment to out-of-state defendants sued by in-state residents. It is obvious to me, as it was to the district court, that Baltimore County is seeking to have its claim heard in a forum which it believes will favor its position visa-vis an out-of-state insurance company. While I have total confidence in the ability of state courts to administer justice impartially, a defendant’s right to remove a case that could be heard in federal court should not be so easily overcome by litigation tactics. See McKinney v. Bd. of Trs. of Mayland Cmty. Coll., 955 F.2d 924, 927-28 (4th Cir.1992).
The cost of permitting this sort of jurisdictional gamesmanship extends beyond the mere defeat of what Congress deems the legitimate purposes of diversity jurisdiction. Fraudulent joinders exact a high toll on individuals who do not rightly belong in a lawsuit: as a result, lives are disrupted by expensive and unnecessary litigation. In my view, human beings are not sacrificial pawns on the board of a party’s litigation strategy. I would affirm the judgment of the district courts in all respects.

. I realize that a claim for fraudulent (as opposed to negligent) disclosure may be perpetrated by omission when a “special duty to disclose exists.” Hogan v. Md. State Dental Ass’n, 155 Md.App. 556, 843 A.2d 902, 908 (Ct.Spec.App.Md.2004). But Johnson owed no duty to Baltimore County. See infra. Part III.B. Further, the case law quoted by the majority for its assertion that liability can be predicated on negligent silence is extracted from a discussion of duty, not a discussion of what constitutes a "statement.” See Griesi v. Atl. Gen. Hosp. Corp., 360 Md. 1, 756 A.2d 548, 555 (2000).